# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS EUGENE MANZI,<br><br>                        Plaintiff,<br><br>        v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>                        Defendant. | Case No. EDCV 20-01292-JEM<br><br>MEMORANDUM OPINION AND ORDER<br>AFFIRMING DECISION OF THE<br>COMMISSIONER OF SOCIAL SECURITY |

## PROCEEDINGS

On June 29, 2020, Louis Eugene Manzi ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. (Dkt. 2.) The Commissioner filed an Answer on September 29, 2020. (Dkt. 14.) On March 4, 2021, the parties filed a Joint Stipulation ("JS"). (Dkt. 16.) The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court affirms the Commissioner's decision and dismisses this case with prejudice.

**BACKGROUND**

Plaintiff is a 48 year-old male who applied for Social Security Disability Insurance benefits on February 8, 2017, alleging disability beginning October 15, 2016.  (AR 15.)  The ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 15, 2016, through the date last insured of December 31, 2017.  (AR 18.)

Plaintiff's claim was denied initially on October 2, 2017, and on reconsideration on January 11, 2018.  (AR 15.)  Plaintiff filed a timely request for hearing, and on July 22, 2019, the Administrative Law Judge ("ALJ") Mary Ann Lunderman held a video hearing from Albuquerque, New Mexico.  (AR 15.)  Plaintiff appeared and testified at the hearing in Moreno, California, and was represented by counsel.  (AR 15.)  Vocational expert ("VE") Roxanne Benoit also appeared telephonically and testified at the hearing.  (AR 15.)

The ALJ issued an unfavorable decision on August 23, 2019.  (AR 15-29.)  The Appeals Council denied review on May 28, 2020.  (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. The ALJ failed to use Adult Listing 11.18 Brain Trauma in accordance with the Federal Rules.

2. The ALJ dismissed Plaintiff's communicative disorder: Aphasia, Adult Listing 2.09.

3. Plaintiff's statements as to the intensity of his impairment cannot be rejected without clear and convincing reasons.

4. The ALJ failed to address the combination of impairments.

5. The ALJ did not meet his burden of proof at Step Five.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v.

1  *Chater*, 80 F.3d 1273 , 1279 (9th Cir. 1996); see also *DeLorme v. Sullivan*, 924 F.2d 841, 846
2
3  (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and
   based on the proper legal standards).

4        Substantial evidence means "'more than a mere scintilla,' but less than a
5
6  preponderance." *Saelee v. Chater*, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting *Richardson v.
   Perales*, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a
7
8  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at
   401 (internal quotation marks and citation omitted).

9        This Court must review the record as a whole and consider adverse as well as
10
11 supporting evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  Where
   evidence is susceptible to more than one rational interpretation, the ALJ's decision must be
12
13 upheld. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
   "However, a reviewing court must consider the entire record as a whole and may not affirm
14
15 simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882
   (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)); see also *Orn v. Astrue*, 495
16 F.3d 625, 630 (9th Cir. 2007).

17                          **THE SEQUENTIAL EVALUATION**

18        The Social Security Act defines disability as the "inability to engage in any substantial
19
20 gainful activity by reason of any medically determinable physical or mental impairment which
   can be expected to result in death or . . . can be expected to last for a continuous period of not
21
22 less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-
   step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520,
23 416.920.

24        The first step is to determine whether the claimant is presently engaging in substantial
25
26 gainful activity. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging
   in substantial gainful activity, disability benefits will be denied. *Bowen v. Yuckert*, 482 U.S. 137,
27
28 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or
   combination of impairments. *Parra*, 481 F.3d at 746.  An impairment is not severe if it does not

1  significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must

2  determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R.

3  Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment

4  meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen,

5  482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the

6  claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir.

7  2001).  Before making the step four determination, the ALJ first must determine the claimant's

8  residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can

9  still do despite [his or her] limitations" and represents an assessment "based on all the relevant

10  evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the

11  claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e),

12  416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

13      If the claimant cannot perform his or her past relevant work or has no past relevant work,

14  the ALJ proceeds to the fifth step and must determine whether the impairment prevents the

15  claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864,

16  869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four,

17  consistent with the general rule that at all times the burden is on the claimant to establish his or

18  her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established

19  by the claimant, the burden shifts to the Commissioner to show that the claimant may perform

20  other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support

21  a finding that a claimant is not disabled at step five, the Commissioner must provide evidence

22  demonstrating that other work exists in significant numbers in the national economy that the

23  claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R.

24  § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and

25  entitled to benefits.  Id.

26

27

28

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 15, 2016, through the date last insured of December 31, 2017.  (AR 18.)

At step two, the ALJ determined that, through the date last insured, Plaintiff had the following medically determinable severe impairments: traumatic brain injury, lumbar degenerative disc disease, bilateral knee and shoulder pain status post motor vehicle collision, depressive disorder, and anxiety disorder.  (AR 18-19.)

At step three, the ALJ determined that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (AR 19-21.)

The ALJ then found that through the date last insured Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b) with the following limitations:

> Standing and walking must have been limited to 2 hours during the eight hour workday and a handheld assistive device was required for all ambulation.  While sitting was limited to 6 hours periodical alternation of sitting and standing was not required as long as normal breaks were provided.  The climbing of ramps and stairs must have been limited to frequently, while the climbing of ladders, ropes, or scaffolds must have been entirely precluded from assigned work duties. Stooping (bending at the waist) and crouching (bending at the knees) must have been limited to occasionally, while kneeling and crawling must be entirely precluded from work duties as assigned.  There were no limitations in vision, hearing, or speaking, and no environmental limitations, except within the assigned work area there must have been less than occasional, seldom to rare exposure to hazards, such as heights and machinery.  Assigned work must have been limited to simple unskilled tasks with a SVP of 1 or 2, learned in 30 days or less or by  a brief demonstration.  Additionally, the assigned tasks must have had minimal change in the tasks as assigned and must have required no more than

occasional, brief, intermittent, work related contact with supervisors and coworkers and no contact with the public.  Finally, the assigned tasks must have been performed primarily independently and not as a member of a team or crew. (AR 21-27.)  In determining the above RFC, the ALJ made a determination that Plaintiff's subjective symptom allegations were "not entirely consistent" with the medical evidence and other evidence of record.  (AR 22.)

At step four, the ALJ found that through the date last insured Plaintiff was not able to perform any past relevant work as an iron worker.  (AR 27.)  The ALJ, however, also found at step five that, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could have performed, including the jobs of mail clerk, tagger, sorter, final assembler, table worker, and document preparer.  (AR 28-29.)

Consequently, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act at any time from October 15, 2016, the alleged onset date, through December 31, 2017, the date last insured.  (AR 29.)

**DISCUSSION**

The ALJ's decision must be affirmed.  The ALJ's RFC is supported by substantial evidence.

**I.     PLAINTIFF DOES NOT MEET OR EQUAL A LISTING**

Plaintiff contends that he meets Listings 11.18 and 2.09.  The Court disagrees.

**A.     Relevant Federal law**

Social Security regulations provide that a claimant is disabled if he or she meets or medically equals a listed impairment.  Section 416.920(a)(4)(iii) ("If you have an impairment that meets or equals one of our listings . . . we will find that you are disabled"); Section 416.920(d) ("If you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience").  In other words, if a claimant meets or equals a listing, he or she will be found disabled at this step "without further inquiry."  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th

1   Cir. 1999).  There is no need for the ALJ to complete steps four and five of the sequential

2   process.  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

3          The listings in Appendix 1 describe specific impairments considered "severe enough to

4   prevent an individual from doing gainful activity, regardless of his or her age, education, or work

5   experience."  Section 404.1525.  An impairment that meets a listing must satisfy all the medical

6   criteria required for that listing.  Section 404.1525(c)(3); Sullivan v. Zebley, 493 U.S. 521, 530

7   (1990).  An impairment cannot meet a listing based only on a diagnosis.  Section 404.1525(d);

8   Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

9          Medical equivalence will be found if the impairment "is at least equal in severity and

10  duration to the criteria of any listed impairment."  (Section 404.1526(a)).  Medical equivalence

11  is based on symptoms, signs, and laboratory findings, but not subjective symptoms.  Section

12  404.1529(d)(3).

13         **B.     Listing 11.18 (Brain Trauma)**

14         Plaintiff suffered a traumatic brain injury in October 2016 after a motorcycle accident.

15  (AR 22.)  He underwent cognitive therapy and in January 2017 was assessed with a residual

16  mild cognitive impairment.  (AR 22.)  Plaintiff claims he is unable to work due to problems with

17  word finding and memory, and issues with the right side of his body.  (AR 22.)  Notwithstanding

18  these impairments and alleged symptoms, the ALJ found that Plaintiff did not meet Listing

19  11.18 for traumatic brain injury (AR 19) and could perform a reduced range of light work.  (AR

20  21.)

21         Listing 11.18 requires:

22             A.  Disorganization of motor function in two extremities (see

23         11.00D1), resulting in extreme limitation (see 11.00D2) in the ability to stand

24         up from a seated position, balance while standing or walking, or use the

25         upper extremities, persisting for at least 3 consecutive months after the

26         injury; or

27

28

B.  Marked Limitation (see 11.00G2) in physical functioning (see

11.00G3a), and in one of the following areas of mental functioning,

persisting for at least three consecutive months after the injury:

    1.    Understanding, remembering, or applying information

        (see 11G3b(i)); or

    2.    Interacting with others (see 11.00G3b(ii)); or

    3.    Concentrating, persisting or maintaining pace (see

        11.00G3b(iii)); or

    4.    Adapting and managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpt. P. 1, App. 1, § 11.18.

The ALJ found that Plaintiff's traumatic brain injury did not result in disorganization of motor function resulting in extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities as required by Section A of Listing 11.18.  (AR 19.)  The ALJ also found no marked limitation in physical and mental functioning as required by Section B of Listing 11.18.  (AR 19.)  Plaintiff, therefore, satisfied neither Section A or B of Listing 11.18.

In arguing that he meets or equals Listing 11.18, Plaintiff submits he has a documented brain injury.  (JS 9.)  Mere diagnosis of a Listed impairment, however, is insufficient to establish disability.  Young v. Sullivan, 911 F.2d 180, 181, 183-85 (9th Cir. 1990); Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985) (The ALJ "will not consider your impairment to be one listed in Appendix solely because it has the diagnosis of a listed impairment.  It must also have the findings shown in the Listing of that impairment.") (citing 20 C.F.R. § 404.1525(d)) (emphasis in original).  The ALJ found that Plaintiff has the medically determinable severe impairment of traumatic brain injury (AR 18), but that does not mean that he meets the criteria for Listing 11.18 or is disabled under Social Security law.

### 1.  Physical Impairments

The ALJ found that Plaintiff's musculoskeletal impairments do not meet or equal Listings 1.02 (major dysfunction of a joint) or 1.04 (disorders of the spine).  (AR 19.)  They do not result

1  in an extreme limitation in the ability to ambulate effectively, the ability to perform fine and

2  gross movements, or a marked limitation in physical functioning as described in those Listings

3  and as required by Section B of Listing 11.18.  (AR 19.)  The ALJ found that Plaintiff did not

4  establish evidence of nerve root compression characterized by neuroanatomic distribution of

5  pain, motor loss, and sensory loss, as required by Listing 1.04.  (AR 19-20.)  Plaintiff asserts he

6  has musculoskeletal impairments with nerve root compression, citing two records.  First, he

7  cites a lumbar spine MRI that discusses nerve impingement but not neuroanatomic distribution

8  of pain, motor loss, and sensory loss, as required by Listing 1.04.  (AR 442-443.)  The ALJ,

9  moreover, relies on the same treatment records in determining that Plaintiff does not have an

10  extreme or marked limitation due to any nerve impingement.  (AR 19-20.)  The second record

11  is a progress note dated nine months after the relevant period that does not discuss nerve root

12  compression or provide evidence meeting all the criteria of Listing 1.04.  (AR 1429.)  Physician

13  RFC assessments, moreover, are contrary to extreme or marked limitations in physical

14  functioning.  Dr. William Curran, a consulting orthopedist, found Plaintiff could do light work.

15  (AR 25.)  So did State agency reviewing physicians.  (AR 26.)  (AR 19-20, 352, 442-443, 979.)

16         The ALJ also found that Plaintiff's musculoskeletal impairments do not meet Listing 1.02

17  because they did not result in inability to ambulate effectively nor do they result in a marked

18  limitation in physical functioning as required by 11.18B.  Plaintiff cites Dr. Curran who opined in

19  September 2017 that Plaintiff cannot ambulate effectively without a cane.  (AR 23, 25, 673.)

20  Section A of 11.18, however, requires an extreme limitation in the ability to ambulate

21  effectively.  Plaintiff ignores the evidence against any extreme limitation in ambulation.  The

22  record evidence establishes that Plaintiff used a cane following the motorcycle accident but by

23  September 2017 was able to ambulate with no observed gait difficulties.  (AR 24.)  By February

24  2018, two months after his date last insured, he was independent with ambulation.  (AR 24.)

25  Nonetheless, the ALJ, acknowledging variable use of a cane throughout the relevant period,

26  gave partial weight to Dr. Curran's opinion and required use of a cane in the RFC.  (AR 21, 25-

27  26.)  Dispositively, Dr. Curran found Plaintiff could do light work.  (AR 25.)  So did State agency

28  reviewing physicians Dr. Hakkinen and Dr. Bitone.  (AR 26.)  Obviously, there was no extreme

1   or marked limitation in the ability to ambulate.  Because Plaintiff did not establish any extreme

2   limitation or marked limitation in physical functioning, he does not meet required elements of

3   Sections A or B of Listing 11.18.

4           Plaintiff does not satisfy Listings 1.02, 1.04, 11.18A or 11.18B.

5           2.    Mental Impairments

6           Plaintiff next contends that he has marked limitations in "understanding, remembering or

7   concentrating," one of the four areas of mental functioning in Section B of Listing 11.18.  (JS

8   10-11.)  Even if these purported marked limitations were true, they would be insufficient to meet

9   Section B, which also requires marked limitations in physical functioning.  As already noted,

10  Plaintiff has not demonstrated marked limitations in physical functioning.  Plaintiff does not

11  meet all the criteria for Listing 11.8B.

12          The ALJ found only moderate limitations in all four areas of mental functioning described

13  in Listing 11.18B.  (AR 20-21.)  Plaintiff points to progress notes and offers his lay opinion that

14  he has trouble with memory and speech and has aphasia, which he says are marked

15  limitations.  The medical evidence, however, indicates that Plaintiff has only moderate

16  limitations in understanding, remembering, or concentrating.  (AR 20.)  Records note Plaintiff

17  has only "mild" expressive and receptive aphasia.  (AR 22, 26, 148, 171.)  In February 2017,

18  Dr. Jason Rosenberg recorded that Plaintiff had "mildly non-fluent aphasia with WF [word

19  finding] difficulty."  (AR 22, 468-469.)  March and April 2017 speech therapy notes indicate

20  "mild expressive and receptive aphasia" with "occasional dysfluencies."  (AR 22, 26, 360, 583.)

21  Speech therapist Courtney Calvert found Plaintiff was moderately impaired in memory and

22  language but "just one point from mild."  (AR 20,24, 627.)  Neurosurgeon Nathan Pratt

23  assessed Plaintiff with moderate cognitive impairment.  (AR 20, 405.)  State agency reviewing

24  psychologist Dr. Norman Zukowsky opined in September 2017 that Plaintiff had only moderate

25  limitations in the four areas of mental functioning.  (AR 26-27, 151.)  State agency psychologist

26  Dr. Alan Goldberg gave the same assessment.  (AR 172-175.)  These physicians opined that

27  Plaintiff is able to understand, carry out, and remember simple instructions, maintain

28  attention/concentration, work consistently and at a reasonable pace, make simple instructions

and work-related decisions, respond appropriately to supervisors and co-workers, and deal with changes in routing work setting.  (AR 26, 27, 155-156, 172-175.)  Plaintiff cites a February 2017 progress note from Dr. Ronjeet Reddy, but Dr. Reddy merely indicated that Plaintiff was limited physically or mentally without stating the extent of his limitations.  (AR 489.)  Plaintiff also cites psychologist Dr. Robert Bilbrey's test results, but Dr. Bilbrey opined Plaintiff had only a moderate limitation in concentrating or persisting independently at work-related activities at a consistent pace.  (AR 663.)  Plaintiff attempts to offer his own interpretation of the above evidence, but the psychologists and other professionals did not find that Plaintiff has marked limitations in understanding, remembering, or concentrating.  The ALJ's finding that Plaintiff has a moderate limitation in understanding, remembering, and applying information is supported by substantial evidence.  Plaintiff does not meet all the criteria for Listing 11.18B.

* * *

Plaintiff challenges the ALJ's assessment of the medical evidence in regard to Listing 11.18, but it is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed.  Rollins v. Massanari, 261 F.3d at 853, 857 (9th Cir. 2001).

The ALJ's determination that Plaintiff does not meet or medically equal the criteria for Listings 1.02, 1.04, 11.18A or 11.18B is supported by substantial evidence.

**C.      Listing 2.09 (Loss of Speech)**

Plaintiff contends that he has a communications disorder resulting from aphasia that impairs language.  Plaintiff appears to contend that he meets or equals Listing 2.09.  The Court disagrees.

Listing 2.09 states:

Loss of speech due to any cause, with the inability to produce by any means
    that can be heard, understood, or sustained.

20 C.F.R. Part 404, Subpart P., App. 1, § 2.09.

1    There is no evidence Plaintiff was unable to produce speech.  Dr. Luke Terry reported

2    on January 26, 2017, that Plaintiff had "generally coherent" speech which was "clear and

3    articulate."  (AR 26, 454.)  In February 2017, Dr. Rosenberg noted that Plaintiff had "mildly non-

4    fluent aphasia with WF [word finding] difficulty."  (AR 22, 468-469.)  March 2017 and April 2017

5    speech therapy progress notes indicate Plaintiff had only "mild expressive and receptive

6    aphasia" with "occasional dysfluencies."  (AR 22, 26, 360, 583.)  Speech therapist Calvert

7    found Plaintiff's language moderately impaired, but "just one point from mild."  (AR 20, 24,

8    627.)  Plaintiff cites the September 1, 2017 opinion of psychologist Dr. Robert Bilbrey, but Dr.

9    Bilbrey did not assess any speaking limitations.  (AR 25, 660-663.)  In fact, Dr. Bilbrey reported

10   Plaintiff had "clear and adequately modulated" speech and "no dysarthria or impairment was

11   noted."  (AR 661.)  Consequently, the ALJ gave little weight to the assessment of

12   communicative limitations by Dr. Hakkarinen and Dr. Bitonte, in view of Plaintiff's mild

13   expressive and receptive aphasia after his traumatic brain injury.  (AR 26.)

14        Dr. Bilbrey opined that Plaintiff could follow one and some two-part instructions and

15   handle simple tasks, consistent with the ALJ's RFC.  (AR 21, 663.)  The ALJ limited Plaintiff to

16   simple, unskilled tasks with minimal changes in tasks assigned, no work as a team, and only

17   occasional brief and intermittent work-related contact with supervisors and co-workers and no

18   contact with the public.  (AR 21.)  As noted above, the ALJ rejected any communication

19   limitations in his RFC.  (AR 21, 26.)

20        The ALJ's determination that Plaintiff does not meet Listing 2.09 is supported by

21   substantial evidence.

22   **II.    THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S SUBJECTIVE
             SYMPTOM ALLEGATIONS**

23        Plaintiff contends that the ALJ erred in discounting Plaintiff's subjective symptom

24   allegations.  The Court disagrees.

25        **A.    Relevant Federal Law**

26        The ALJ's RFC is not a medical determination but an administrative finding or legal

27   decision reserved to the Commissioner based on consideration of all the relevant evidence,

28

1   including medical evidence, lay witnesses, and subjective symptoms.  See SSR 96-5p; 20

2   C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must consider all relevant evidence

3   in the record, including medical records, lay evidence, and the effects of symptoms, including

4   pain reasonably attributable to the medical condition.  Robbins, 466 F.3d at 883.

5       The test for deciding whether to accept a claimant's subjective symptom testimony turns

6   on whether the claimant produces medical evidence of an impairment that reasonably could be

7   expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341,

8   346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80

9   F.3d at 1281-82 esp. n.2.  The Commissioner may not discredit a claimant's testimony on the

10  severity of symptoms merely because they are unsupported by objective medical evidence.

11  Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ finds the claimant's pain

12  testimony not credible, the ALJ "must specifically make findings which support this conclusion."

13  Bunnell, 947 F.2d at 345.  The ALJ must set forth "findings sufficiently specific to permit the

14  court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas v.

15  Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see also Rollins, 261 F.3d at 857; Bunnell, 947

16  F.2d at 345-46.  Unless there is evidence of malingering, the ALJ can reject the claimant's

17  testimony about the severity of a claimant's symptoms only by offering "specific, clear and

18  convincing reasons for doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at

19  722.  The ALJ must identify what testimony is not credible and what evidence discredits the

20  testimony.  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

21      **B.    Analysis**

22      In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable

23  impairments reasonably could be expected to cause the alleged symptoms.  (AR 22.)  The ALJ,

24  however, also found that Plaintiff's statements regarding the intensity, persistence, and limiting

25  effects of these symptoms are "not entirely consistent" with the medical evidence and other

26  evidence of record.  (AR 22.)  Because the ALJ did not make any finding of malingering, she

27  was required to provide clear and convincing reasons supported by substantial evidence for

28

1    discounting Plaintiff's subjective symptom allegations.  Smolen, 80 F.3d at 1283-84;

2    Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008).  The ALJ did so.

3            First, the ALJ found that Plaintiff's subjective symptom allegations were inconsistent with

4    the objective medical evidence.  (AR 22, 24.)  An ALJ is permitted to consider whether there is

5    a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the

6    only reason for discounting a claimant's credibility.  Burch v. Barnhart, 400 F.3d 676, 680-81

7    (9th Cir. 2005).  As already noted, Plaintiff has only moderate limitations in the four areas of

8    mental functioning in Listing 11.18B.  (AR 20-21.)  Plaintiff has had no significant mental health

9    treatment for depression or anxiety.  (AR 20-21.)  In September 2017, Dr. Bilbrey reported that

10   Plaintiff has had no history of mental health treatment and does not take any psychiatric

11   medication.  (AR 660.)  He has no history of inpatient psychiatric treatment.  (AR 22, 660.)  On

12   exam, he was  oriented in all dimensions with adequate attention and concentration.  (AR 22,

13   661.)  There was minimal treatment for mood disorder through the date last insured, with

14   subsequent records documenting continued normal mood and affect on examination.  (AR 22,

15   712.)  As already noted, Plaintiff's memory was only moderately impaired.  (AR 20.)  He

16   suffered memory loss after the motorcycle accident but improved through the date last insured.

17   (AR 24.)  Speech therapist Calvert found moderate impairment in memory in March 2017.  (AR

18   626-627.)  In February 2018, he had normal mood and affect with intact remote and recent

19   memory.  (AR 24, 816, 834.)  As for physical impairments, Plaintiff received treatment following

20   his October 2016 accident but received little or no treatment between April 2017 and his date

21   last insured of December 31, 2017.  (AR 25.)  As already noted, his musculoskeletal

22   impairments are not disabling.

23          Second, Plaintiff received conservative treatment.  An ALJ may consider conservative

24   treatment in evaluating subjective symptom allegations.  Tommasetti, 533 F.3d at 1039.  Here,

25   Plaintiff received no mental health treatment.  (AR 20-21, 660.)  He received medication and

26   physical therapy for his physical impairments and pain following the accident but had little or no

27   regular treatment between April 2017 and his date last insured of December 31, 2017.  (AR

28   27.)  He testified at the hearing that he was not taking any medication.  (AR 23, 101.)

1    Third, the ALJ found inconsistencies between Plaintiff's statements regarding his

2  subjective symptoms and his other statements and conduct.  Light v. Soc. Sec. Adm., 119 F.3d

3  789, 792 (9th Cir. 1997).  Here, Plaintiff's condition improved.  Therapy records documented

4  improvement in his lower and upper extremity strength, and a few months after the date last

5  insured Plaintiff had 5/5 motor strength in upper and lower extremities and a full range of

6  motion in all extremities by March 2018.  (AR 23, 365, 371, 395, 478, 834, 957.)  Dr. Bilbrey

7  reported that Plaintiff was able to perform "all his activities of daily living."  (AR 661.)  In April

8  2017, Plaintiff indicated being "highly interested in resuming weight lifting exercise."  (AR 23.)

9    Plaintiff disagrees with the ALJ's evaluation of the record evidence, but again it is the

10  ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.

11  Andrews, 53 F.3d at 1039.  Where the ALJ's interpretation of the record is reasonable, as it

12  is here, it should not be second-guessed.  Rollins, 261 F.3d at 857.

13    The ALJ discounted Plaintiff's subjective symptom allegations for clear and convincing

14  reasons supported by substantial evidence.

15  **III.    THE ALJ'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

16    As noted above, the ALJ found that the severity of Plaintiff's mental impairments,

17  considered singly and in combination, did not meet or medically equal the criteria for Listings

18  12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive

19  disorders).  (AR 20.)  In support of that findiing, the ALJ cited evidence establishing only

20  moderate limitations in the four areas of mental functioning in Listing 11.18B.  (AR 20-21.)

21  Plaintiff appears to challenge these findings based on a treatment note by Dr. Bilbrey indicating

22  moderate to marked limitations.  (AR 149.)  This record, however, was considered by State

23  agency psychologist Dr. Norman Zukowsky who questioned the validity of the testing and who

24  assessed only moderate limitations in the four areas of mental functioning.  (AR 151.)  Dr. Alan

25  Goldberg made the same assessment.  (AR 172-175.)  Dr. Bilbrey himself opined that Plaintiff

26  could handle simple tasks consistent with the ALJ's RFC.  (AR 21, 663.)

27    Plaintiff next argues that the ALJ did not address his pain.  As noted above, however,

28  the ALJ properly found Plaintiff's subjective complaints, including his pain complaints,

1  inconsistent with the medical and other evidence of record.  Plaintiff cites only a progress note

2  dated nine months after the relevant period.  (AR 1429.)

3      Plaintiff also contends that the ALJ's RFC is deficient because it contains no speech

4  limitations.  As noted above, however, the evidence establishes that Plaintiff does not meet the

5  criteria of Listing 2.09.  Dr. Bilbrey, who Plaintiff cites, did not impose any speech limitations.

6  Indeed, he noted Plaintiff's speech was clear and adequately modulated without impairment.

7  (AR 22.)

8      Plaintiff contends that the ALJ did not address in combination his physical and mental

9  limitations.  Plaintiff, however, does not present any theory as to how his impairments and

10  limitations meet the criteria for any Listing.  Burch, 400 F.3d at 683.  Additionally, the Court has

11  noted that Plaintiff received no treatment from April 2017 to his date last insured, can ambulate

12  adequately with a cane, and can perform all activities of daily living.  There simply is no

13  evidence of any disabling impairments or limitations, considered singly or in combination.

14      The ALJ's RFC is supported by substantial evidence.

15  **IV.     THE ALJ MET HIS BURDEN AT STEP FIVE**

16      At the hearing, the ALJ asked the VE whether jobs existed in the national economy for

17  an individual with the Claimant's age, education, work experience, and RFC.  (AR 28.)  The VE

18  testified that such an individual could perform light, unskilled occupations such as mail clerk,

19  tagger, and sorter.  (AR 28.)  The VE also testified that such an individual could perform

20  sedentary, unskilled jobs in the national economy such as final assembler, table worker, or

21  document preparer.  (AR 28.)  The ALJ properly relied on the VE's testimony in finding that

22  there are jobs in the national economy that Plaintiff can perform.  (AR 28-29.)  Bayliss, 427

23  F.3d at 1218 (A VE's "recognized expertise provides the necessary foundation for his or her

24  testimony . . . no additional foundation is required.").

25      Plaintiff's counsel asked the VE whether a worker could be off task more than 15% of

26  the time.  The VE testified an employer would not tolerate being off work 15% of time and

27  needed supervision.  (AR 113.)  No such limitations, however, were included in Plaintiff's RFC

28  nor does Plaintiff cite any record support for those limitations.  An ALJ is free to exclude

1  limitations from a hypothetical question that are not supported by the record.  Osenbrock v.

2  Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

3        The ALJ's step five finding is supported by substantial evidence.

4                         * * *

5        The ALJ's nondisability determination is supported by substantial evidence and free of

6  legal error.

7                     **ORDER**

8        IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the

9  Commissioner of Social Security and dismissing this case with prejudice.

10

11  DATED:  April 9, 2021                       */s/ John E. McDermott*

12                                          JOHN E. MCDERMOTT
                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28